STATE OF IOWA, Appellee, v. W. A. SEXSMITH, Appellant.

**INDICTMENT AND INFORMATION:** Requisites and Sufficiency— Manslaughter by Negligence. An indictment for manslaughter by negligence *must* specifically set out the *facts* constituting the negligence. (See Book of Anno., Vol. 1, Sec. 13743, Anno. 1 *et seq.*)

Headnote 1: 30 C. J. p. 97.

*Appeal from Mahaska District Court.*—CHARLES A. DEWEY, Judge.

DECEMBER 15, 1925.

THE defendant was charged with manslaughter, in that he had caused the death of one Ridpath by gross negligence on his part. There was a verdict of guilty, and sentence entered thereon. The defendant has appealed.—*Reversed.*

*McCoy & McCoy,* for appellant.

*Ben J. Gibson,* Attorney-general, *Roscoe J. Woodard,* and *B. W. Preston,* for appellee.

EVANS, J.—By proper demurrer, the defendant challenged the sufficiency of the indictment as a charge of manslaughter, or of any other crime. This demurrer was overruled, and error is assigned and argued on the ruling. The charging part of the indictment was as follows:

"Did willfully, unlawfully, and feloniously, with gross negligence and recklessness, so manage and drive a certain motor vehicle then and there driven by him, the said W. A. Sexsmith, that thereby, and by reason of said gross negligence and recklessness, mortal wounds were inflicted upon the body and person of one J. W. Ridpath, then and there being, of which mortal wounds so inflicted by him, the said W. A. Sexsmith, he, the said J. W. Ridpath, did languish, and languishing did live until on or about the 26th day of October, 1924, when the said J. W. Ridpath did die, and so, the grand jury aforesaid, being legally impaneled, as aforesaid, aver, present, find, and say that he, the said W. A. Sexsmith, in manner and form as aforesaid, did willfully, unlawfully, and feloniously kill the said J. W. Ridpath, a human being then there being. A more particular statement of the facts constituting the offense herein charged, as to the time, place, and manner of the commission thereof, being to this grand jury at this time unknown. All contrary to the statute in such cases made and provided, and against the peace and dignity of the state of Iowa."

The question presented is whether the indictment fairly complies with Section 13735 of the Code of 1924, which provides as follows:

"The indictment must be direct and certain as regards:

"1.   The party charged.

"2.   The offense charged.

"3.   The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

The indictment before us contains no allegation of any specific fact, as distinguished from conclusions of fact and law. The defendant in a criminal case is entitled "to be informed" by the indictment, of the specific charges made against him. In this manner the defendant is apprised of the general character of the evidence which will confront him at the trial. He is thereby furnished a fair opportunity to meet such evidence. To

charge a defendant in general terms with manslaughter, involves a multiplicity of possibilities as to the method by which the manslaughter was committed. Likewise, a charge of gross negligence offers a similar multiplicity of possibilities as to the acts constituting such negligence. To join these two allegations, and to aver that the gross negligence resulted in the manslaughter, adds no information of fact. Negligence, in its generic sense, takes on a myriad of forms. But every case of negligence is individualized by its own specific acts. If it be asked what act or acts of negligence the defendant committed; in what manner such act or acts operated upon the deceased so as to result in his killing, no answer can be found in the indictment to either question. No act of the defendant's is so specified as to enable the court to say whether it was lawful or unlawful.

The argument for the State, is that this indictment conformed to Section 13733 of the Code of 1924, in that it contains:

"A statement of the facts constituting the offense * * * in such manner as to enable a person of common understanding to know what is intended."

There is no want of harmony between these two sections. Each of them calls for a "statement of the facts" constituting the alleged offense. It is argued that the defendant knew what was intended, because he was there, and knew his own acts, and had no need of specifications of them. This argument would dispense with the necessity of any allegations in an indictment. It assumes the truth of the charges before they are proven. The State is not bound by the defendant's version of the facts. Neither is the defendant bound by the State's version of them. But the defendant is entitled to know such version, in order that he may have a fair opportunity to meet evidence with evidence. If this indictment is good in this case, it would be equally good in any other case, regardless of the specific facts held in reserve for the trial. If we should conceive of a score of deaths resulting unlawfully from the gross carelessness of as many wrongdoers, every one of them could be lawfully indicted in the exact words of this indictment, changing only names, dates, and venue. It is the function of an indictment to individualize the particular case. This is done by setting forth the particular

circumstances of the particular case, so far as they disclose the wrongful acts complained of.

From this indictment one might guess that the defendant collided with the deceased, and thereby caused his death. But there is no direct allegation to that effect. This was the theory of the State upon the trial. If, however, its evidence had shown that there was no collision, but that the negligence of the defendant exposed the deceased to other dangers and to collision with other obstructions on the highway, such evidence would have been just as admissible, under the indictment, as was the evidence of actual collision. The fair requirements of an indictment may often be illustrated by the nature of the evidence offered by the State on the trial. In this case, the theory of the State was that the truck of the defendant collided with the wagon of the deceased; that the cause of such collision was the negligent act of the defendant, in that he failed to have proper lights. The guilt or innocence of the defendant was made to turn upon that question. Nothing could be more reasonable than to require the indictment to charge that fact, as the basis of the claim of gross negligence.

There are crimes which are chargeable in an indictment in the language of the statute. Such are crimes which are specifically defined by the statute. Such rule of pleading has no application to resultant crimes, predicated upon negligence.

We have quite recently covered this question in *State v. Decker & Sons*, 197 Iowa 41. We see little occasion for repeating the discussion. See, also, *State v. Frear*, 199 Iowa 1063, wherein our cases are largely collated. The rule applicable in this case is tersely stated in 1 McClain on Criminal Law, Section 349, as follows:

"It is not sufficient in charging manslaughter by negligence to simply allege that by the negligence and misconduct of defendant the death of deceased was caused; the facts must be set out."

There is no escape from the conclusion that the indictment was bad, and that the demurrer should have been sustained. In view of our conclusion at this point, and the fact that there may be another trial, it is not meet that we should give any consideration to the evidence in the record before us.

For the error herein considered, the judgment below must be reversed. It is so ordered.—*Reversed.*

FAVILLE, C. J., and ALBERT and MORLING, JJ., concur.